UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TOWAKI KOMATSU,

                    Plaintiff,

            -against-

THE CITY OF NEW YORK; CUBESMART; DANIELS
NORELLI CECERE & TAVEL PC; URBAN PATHWAYS
INC.; RONALD ABAD; MARILYN ANDZESKI;
STEVEN BANKS; NANCY BANNON; KRISTIN
BENJAMIN-SOLIS; SHARON COATES; MARIN
GERBER; ALLISON HEILBRAUN; LISA LOMBARDI;
MOLLY McCRACKEN; JEFFREY MOSCZYC; KISHEA
PAULEMONT; ANN MARIE SCALIA; AVRAHAM
SCHMEIDLER; FREDERICK SHACK; NANCY
SOUTHWELL; ERIC TAVEL; WENDELL VAUGHAN;
THE NEW YORK STATE OFFICE OF COURT
ADMINISTRATION; THE NEW YORK STATE
UNIFIED COURT SYSTEM; BRENDA SPEARS (in her
official capacity as a New York City Housing Court judge
assigned to the Bronx Housing Court),

                    Defendants.

1:20-CV-6510 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

        Plaintiff, appearing *pro se*, brings this action under 42 U.S.C. §§ 1983, 1985, and 1986,

and 18 U.S.C. § 1964.[1] He also asserts claims under state law. He seeks injunctive relief and

damages, as well the criminal prosecution of at least some of the defendants. Plaintiff sues one of

the individual defendants in her official capacity (Judge Spears), and the rest of the individual

defendants in both their official and individual capacities. By order dated August 31, 2020, the

---

[1] The Court understands Plaintiff's claims under 18 U.S.C. § 1964 as brought under the
Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1967 ("RICO" or "civil
RICO").

Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis*. For the reasons set forth below, the Court dismisses this action.

## STANDARD OF REVIEW

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court of the United States has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal

conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff's many allegations in his amended complaint[2] include the following: Between October 2015 and February 2016, with the assistance of Services for the Underserved, Inc. ("SUS"), Plaintiff resided in hotels as temporary shelters. In 2015, he signed an agreement with Cubesmart to rent a storage unit at one of Cubesmart's facilities in Queens, New York. In 2016, he signed a lease with Urban Pathways, Inc. ("Urban"),[3] to rent the apartment in the Bronx, where he currently resides. The lease stated that he was to be the sole occupant of the apartment, but Urban forced him to have a roommate, and the lease was illegally altered to allow for a roommate. The roommate assaulted him. Plaintiff has asked Urban to evict his roommate, but Urban has refused. Urban has pursued litigation against Plaintiff in the New York City Civil Court, Housing Part, Bronx County ("Housing Court"), including one action that Urban filed on January 28, 2018, that is pending before Judge Weissman, as well as another action that it filed on February 18, 2020, that is before Judge Spears. Plaintiff has raised the roommate issue in that litigation.

In January 2017, HRA agreed to pay to Cubesmart Plaintiff's storage expenses while Plaintiff resides in his Urban apartment. But HRA later contested its promise to pay for those expenses, or to reimburse Plaintiff for the storage expense he had already paid, because of its belief that Plaintiff is residing in temporary housing. Plaintiff litigated that issue in fair hearings

---

[2] Plaintiff's amended complaint (ECF 8) is the operative pleading for this action.

[3] Plaintiff describes Urban as a "private entity" and "business partner" of the New York City Human Resources Administration ("HRA"). (ECF 8, at 13.)

before the New York State Office of Temporary and Disability Assistance ("OTDA"), and then in the state courts in proceedings that he initiated under Article 78 of the New York Civil Practice Law and Rules ("Article 78"). But on or about January 31, 2018, Justice Bannon, of the New York Supreme Court, New York County, dismissed his initial Article 78 proceeding; Plaintiff's appeal of that dismissal is pending. Plaintiff has brought another proceeding that is pending before Justice Frank of the same court. On April 10, 2019, Cubesmart conducted an auction of Plaintiff's stored property due to HRA's failure to continue to pay Plaintiff's storage fees.

In addition to seeking damages, as well as costs for all his "legal needs" (ECF 8, at 78), Plaintiff asks the Court to order the City of New York and Defendant Mosczyc (an HRA attorney) to provide discovery and explanations concerning Plaintiff's state-court litigation. He also requests that this Court to stay his pending Housing Court action before Judge Spears, to "transfer" it to this Court, and to "consolidate" it with this action. (*Id.* at 77.) Plaintiff further asks this Court to order Justice Bannon to provide an explanation with regard an adjournment decision she made in Plaintiff's state-court litigation. He requests that the Court direct HRA officials "to assist [him] in any way possible." (*Id.*) He also requests that the Court order the City of New York to cease all of its business with Urban. And he asks the Court to direct HRA "to immediately cause [him] to be employed in a job that provides [him] with compensation of $450 per day." (*Id.* at 77-78.) In addition, he requests that the Court "adopt the practice of *USA v. Donziger*, No. 11-cv-0691 (LAK) (RWL) (S.D.N.Y.) to . . . appoint private prosecutors to commence criminal prosecutions against the defendants . . . in response to criminal actions and omissions that they have committed and/or condoned against [him] to remedy the fact that prosecutors have negligently refused to do so." (*Id.* at 78.)

**DISCUSSION**

**A.    Immune defendants**

**1.    The Eleventh Amendment**

Plaintiff's claims under federal law against the New York State Office of Court Administration (OCA), the New York State Unified Court System (UCS), as well as against Justice Bannon, Judge Spears, and Defendant Vaughan (Justice Frank's law clerk), in their official capacities, are barred by the doctrine of Eleventh Amendment immunity. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogate[d] the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, second alteration in original). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id*. (internal quotation marks and citation omitted). Specifically, "[t]he Eleventh Amendment bars a damages action in federal court against . . . state . . . officials when acting in their official capacity unless the state has waived its sovereign immunity or Congress has abrogated it." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Sci*., 804 F.3d 178, 193 (2d Cir. 2015). This immunity also shields States and their agencies from claims for money damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984).

OCA and UCS are "arm[s] of the State," and therefore are "protected by Eleventh Amendment sovereign immunity." *Gollomp*, 568 F.3d at 366; *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999). And this immunity has also been specifically applied to a New York Supreme Court Justice, a New York Housing Court Judge, and a New York Supreme

Court Justice's law secretary (law clerk) sued in their official capacities. *See Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 122-23 (2d Cir. 2020) (New York Supreme Court Justice); *Gollomp*, 568 F.3d at 365 (New York Supreme Court law secretary); *Weissbrod v. Housing Part of the Civil Court of the City of New York*, 293 F. Supp. 2d 349, 354 (S.D.N.Y. 2003) (claims against state officials in their official capacities, including Housing Court Judges).

Congress has not abrogated the States' immunity for claims under 42 U.S.C. §§ 1983, 1985, 1986, or civil RICO. *See Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990) (claims under § 1983); *Chris H. v. New York*, No. 17-CV-2902, 2017 WL 6514690, at *2 (S.D.N.Y. Dec. 18, 2017) (claims under § 1983 and § 1985), *aff'd* 740 F. App'x 740 (2d Cir. 2018) (summary order); *Inkel v. Connecticut*, No. 3:17-CV-1400, 2019 WL 1230358, at *5 (D. Conn. Mar. 15, 2019) (claims under civil RICO); *Qader v. Cohen & Slamowitz*, No. 10-CV-1664, 2011 WL 102752, at *3 (S.D.N.Y. Jan. 10, 2011) (claims under §§ 1983, 1985, and 1986). And the State of New York has not waived its immunity to suit in federal court. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Accordingly, the Court dismisses Plaintiff's claims under federal law against OCA and UCS, as well as against Justice Bannon, Judge Spears, and Defendant Vaughan, in their official capacities, under the doctrine of Eleventh Amendment immunity. 28 U.S.C. § 1915(e)(2)(B)(iii).

### 2.   Judicial immunity

Plaintiff's claims under federal law against Justice Bannon and Defendant Vaughan, in their individual capacities, are barred under the doctrine of judicial immunity. Under this doctrine, judges are absolutely immune from suit for claims against them in their individual capacities for damages for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (applying judicial immunity to claims under § 1983); *Deem v. DiMella-Deem*, 941 F.3d 618, 620-21 (2d Cir. 2019) (same as to claims under

§ 1983 and § 1985), *cert denied*, 140 S. Ct. 2763 (2020); *Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA*, No. 3:17-CV-2164, 2018 WL 2138631, at *2 (D. Conn. May 9, 2018) (same as to §§ 1983, 1985, and civil RICO). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation . . . ." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).

Judicial immunity does not apply when a judge acts outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). This immunity also applies to government officials, including New York Supreme Court Justices' law secretaries, for their acts that assist a judge in the performance of his or her judicial duties. *See Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *Gollomp*, 568 F.3d at 365. And an amendment to § 1983 prohibits injunctive relief against a judge in his or her judicial capacity unless a declaratory decree was violated or declaratory relief is unavailable. *See* § 1983.

Plaintiff's claims against Justice Bannon arise from her actions and decisions in one of Plaintiff's state-court civil actions that she presided over. And his claims against Defendant Vaughan arise from Vaughan's refusal to give him a copy of an original decision of Justice Frank's that had been superseded by amended decision.[4] This alleged conduct by both of those

---

[4] Plaintiff alleges that Justice Frank originally issued a written decision as to Plaintiff's civil action before him that erroneously indicated that it was a final decision as to all of Plaintiff's claims. Vaughan handed Plaintiff a copy of that decision. Plaintiff "realized that

defendants is well within the scope of judicial duties. Justice Bannon and Defendant Vaughan are therefore immune from suit as to Plaintiff's claims against them, in their individual capacities, under the doctrine of judicial immunity. Accordingly, the Court dismisses those claims under the doctrine of judicial immunity and as frivolous. *See* § 1915(e)(2)(B)(i), (iii); *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis* statute].")[5]

### 3.    Government-attorney immunity

The Court must also dismiss Plaintiff's claims under § 1983 for damages against Defendants Mosczyc and Gerber, in their individual capacities, that arise from those defendants' legal advocacy for HRA against Plaintiff in the OTDA and in the state courts, under the doctrine of government-attorney immunity. Government attorneys are immune from suit under § 1983 for damages, in their individual capacities, "when functioning as an advocate of the state [or local government] in a way that is intimately associated with the judicial process." *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006). This immunity applies to government attorneys

---

Ju[stice] Frank illegally dismissed [his] HRA lawsuit" and notified Vaughan about it. (ECF 8, at 42.) Vaughan then directed Plaintiff to return the decision to him. Justice Frank then "issued an amended decision in which either he or Mr. Vaughan applied the equivalent of 'white-out' in the area of the decision that Ju[stice] Frank issued earlier . . . to conceal the fact that [Justice] Frank had illegally dismissed [Plaintiff's] lawsuit in spite of the fact that [Plaintiff] continued to have claims pending in it." (*Id.*) Justice Frank "filled-in a box labeled 'Non-Final Disposition.'" (*Id.*) Vaughan then handed Plaintiff a copy of the amended decision but refused to return to Plaintiff a copy of Justice Frank's original decision and told him that it was not a public record. (*Id.* at 42-43.)

[5] Judicial immunity precludes Plaintiff's claims under § 1983 for injunctive relief against Justice Bannon. This is so because Plaintiff can appeal (and is presently appealing) Justice Bannon's decisions in the state appellate courts. *See generally Berlin v. Meijias*, No. 15-CV-5308, 2017 WL 4402457, at *4 (E.D.N.Y. Sept. 30, 2017) ("Here, no declaratory decree was violated and declaratory relief is available to plaintiffs through an appeal of the state court judges' decisions in state court."), *appeal dismissed*, No. 17-3589 (2d Cir. Apr. 18, 2018) (effective May 18, 2018).

who perform functions "'that can fairly be characterized as closely associated with the conduct of litigation or potential litigation' in civil suits." *Id.* (quoting *Barrett v. United States*, 798 F.2d 565, 572 (2d Cir. 1986)). And it has been extended to government attorneys who prosecute cases in administrative hearings. *Butz v. Economou*, 438 U.S. 478, 515 (1978); *Baker v. Bzydra*, No. 3:18-CV-1792, 2019 WL 6619348, *2 (D. Conn. Dec. 5, 2019); *Herbst v. INS*, Nos. 98-CV-5533, 98-CV-7424, 1999 WL 1052461, at *6 (S.D.N.Y. Nov. 19, 1999).

At least some of Plaintiff's claims under § 1983 against Defendants Mosczyc and Gerber arise from their activities as attorneys representing HRA against Plaintiff in administrative hearings before the OTDA, and against Plaintiff in his Article 78 proceeding before Justice Bannon. Accordingly, the Court dismisses those claims under § 1983 for damages against Mosczyc and Gerber, in their individual capacities, under the doctrine of government-attorney immunity. *See* § 1915(e)(2)(B)(iii).

## B.   City defendants

### 1.   City officials sued in their official capacities

Plaintiff sues Defendants Banks, Benjamin-Solis, Gerber, Mosczyc, Scalia, and Schmeidler, who are all employees of the City of New York ("City officials"), in both their official and individual capacities. (ECF 8, at 1, 13.) But as the Supreme Court of the United States has held, "[t]here is no longer a need to bring official-capacity actions against local government officials [because] local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *see also Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 687 (2d Cir. 2005) ("[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself."). Accordingly, the Court dismisses Plaintiff's claims under federal law against those defendants, in

their official capacities, for failure to state a claim on which relief may be granted.

*See* 1915(e)(2)B)(ii).

### 2.     City officials sued in their individual capacities

Plaintiff sues those City officials in their individual capacities, arguing that they failed to enforce the law or protect his constitutional rights. He also asserts that they violated his right to procedural due process in failing to pay, or continuing to pay, his storage fees to Cubesmart. The Court must dismiss those claims.

### a.     Duty to enforce the law or protect constitutional rights

The Constitution, including the Due Process Clause of the Fourteenth Amendment, does not require government officials to enforce laws or protect individuals from the bad acts of private actors. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 755-56 (2005); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994). Plaintiff seems to ask this Court to hold the City officials liable for their failure to oversee the actions or omissions of Urban, his landlord. But there is no constitutional duty on the part of government officials to take such actions. Accordingly, the Court dismisses Plaintiff's claims under § 1983 against the City officials, in their individual capacities, arising from their alleged failures to enforce the law or protect him, for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

### b.     Procedural due process

The Due Process Clause of the Fourteenth Amendment only protects "against deprivations [of life, liberty, or property] without due process of law." *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006) (internal quotation marks and citation omitted). "The fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)

(internal quotation marks and citations omitted). Determining whether the process provided is adequate requires a weighing of: (1) the private interest affected; (2) the risk of erroneous deprivation and the probable value of further safeguards; and (3) the governmental interest at issue. *See Rivera-Powell*, 470 F.3d at 466 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Generally, some kind of predeprivation process must be provided before liberty or property rights are infringed upon. *See Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 299 (1981); *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003). Where a person is deprived of a property right because of a random and unauthorized act, rather than through the operation of established state procedures, the Due Process Clause is satisfied if the state provides an adequate postdeprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that a "random and unauthorized" deprivation of a protected interest does not result in a violation of procedural due process, as long as the state provides an adequate postdeprivation remedy); *Rivera-Powell*, 470 F.3d at 465 (holding that "[w]hen the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy").

Plaintiff alleges that after HRA informed him that it would not pay, or continue to pay, his storage fees to Cubesmart, he sought fair hearings before the OTDA, and when unsuccessful in those administrative proceedings, he sought judicial review in the state courts under Article 78. He alleges that one of his Article 78 proceedings was dismissed but is pending on appeal, and that another is pending before the trial court. Assuming that the payment of his storage fees are a property interest protected by procedural due process, Plaintiff has alleged nothing to show that the state procedures (the fair hearings or the Article 78 proceedings) in which he is still

participating are inadequate. *See Horton v. Westling*, 765 F. App'x 531, 533 (2d Cir. 2019)

(summary order) ("This Court has often acknowledged that Article 78 proceedings provide an

adequate state remedy for procedurally improper agency decisions.") (citations omitted). The

Court therefore dismisses Plaintiff's claims under § 1983 against the City officials, in their

individual capacities, that they violated his right to procedural due process for failure to state a

claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

### 3.     The City of New York

The Court further dismisses Plaintiff's claims under federal law against the City of New

York. When a plaintiff sues a municipality, such as the City of New York, under § 1983, it is not

enough for the plaintiff to allege that one of the municipality's employees or agents engaged in

some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the

plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other

local government may be liable under this section [1983] if the governmental body itself

'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such

deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692

(1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a § 1983

claim against a municipality, the plaintiff must allege facts showing (1) the existence of a

municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the

violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d

Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal

citations omitted). A municipality's policy, custom, or practice must also be the basis for claims

against the municipality under § 1985 or §1986.[6] *See Owens v. Haas*, 601 F.2d 1242, 1247 (2d

Cir. 1979) (claims under § 1985); *Noonan v. City of New York*, No. 14-CV-4084, 2015 WL

3948836, at *3 (S.D.N.Y. June 26, 2015) (claims under §§ 1983 and 1986).

Plaintiff alleges no facts showing that the City of New York violated any of his federal

constitutional or statutory rights because of one of the City's policies, customs, or practices. The

Court therefore dismisses Plaintiff's claims under federal law against the City of New York for

failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

## C.    Private prosecution

Plaintiff seeks the criminal prosecution of the defendants or other individuals. A private

citizen, however, cannot prosecute a criminal action in federal court. *See Leek v. Timmerman*,

454 U.S. 83, 86-87 (1981) (prisoners lack standing to seek the issuance of an arrest warrant);

*Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially

cognizable interest in the prosecution or nonprosecution of another."). And because federal

prosecutors possess discretionary authority to bring criminal actions, they are "immune from

control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457

F.2d 81, 87 (2d Cir. 1972). Accordingly, the Court dismisses Plaintiff's claims in which he seeks

the criminal prosecution of the defendants or others for failure to state a claim on which relief

may be granted. *See* § 1915(e)(2)(B)(ii).

## D.    Private defendants

The Court dismisses Plaintiff's claims under § 1983 against the private defendants

(Defendants Cubesmart; Daniels Norelli Cecere & Tavel PC; Urban; Abad; Andzeski; Coates;

---

[6] Courts have held that there is no municipal liability under civil RICO. *See, e.g.*, *Rogers v. City of New York*, 359 F. App'x 201, 204 (2d Cir. 2009) (summary order).

Heilbraun; Lombardi; McCracken; Paulemont; Shack; Southwell; and Tavel). To state a claim

under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of

the United States was violated, and (2) the right was violated by a person acting under the color

of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988). "Because the

United States Constitution regulates only the Government, not private parties, [in a claim

brought under § 1983,] a litigant claiming that his constitutional rights have been violated must

first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan

Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks and citation omitted). Private

parties are generally not state actors, and are therefore not usually liable under § 1983. *Sykes v.

Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch.

Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307,

323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private

parties . . . .") (internal quotation marks and citation omitted).

Absent special circumstances suggesting concerted action between an attorney and a state

representative, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970), a private attorney's or

private law firm's legal representation of a private entity does not constitute the degree of state

involvement necessary for a claim under § 1983, regardless of whether that attorney or firm is

privately retained, court-appointed, or employed as a public defender, *see Bourdon v. Loughren*,

386 F.3d 88, 90 (2d Cir. 2004) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318-19 (1981), and

*Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997)); *see also Schnabel v. Abramson*, 232

F.3d 83, 87 (2d Cir. 2000) (holding that a legal aid organization ordinarily is not a state actor for

purposes of § 1983); *Lefcourt v. Legal Aid Soc'y*, 445 F.2d 1150, 1157 n.10 (2d Cir. 1971) ("To

subject to the constitutional limitations on State action the hiring and firing and other practices of

any private law firm which accepted court appointments to represent indigent claims would be a highly unreasonable extension of the State action concept and § 1983 and would quite transcend their intended scope." ); *Shorter v. Rice*, No. 12-CV-0111, 2012 WL 1340088, at *4 (E.D.N.Y. Apr. 10, 2012) ("[I]t is axiomatic that neither public defenders, such as Legal Aid attorneys, nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position.").

A private party's actions can be considered state action in three situations: (1) the private party acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) the private party willfully participates in joint activity with the state or its functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) the state has delegated a public function to the private party (the "public function" test). *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citation omitted). The fundamental question under each test is whether the private party's challenged actions are "fairly attributable" to the state. *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). "[A] State normally can be held responsible for a private decision . . . when it has . . . provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). But the State's "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives." *Id*. at 1004-05.

"[T]he provision of homeless services by a private organization, even under contract with the state or where subject to governmental regulation, does not turn the private organization or its employees into state actors." *Ortega v. Samaritan Village Myrtle Ave. Men's Shelter*, No. 18-CV-5995, 2020 WL 1043305, *4 (E.D.N.Y. Mar. 4, 2020) (internal quotation marks and citation

omitted); *see also Reaves v. Dep't of Veterans Affairs*, No. 08-CV-1624, 2009 WL 35074, at *
(E.D.N.Y. Jan. 6. 2009) (corrected Jan. 14. 2009) ("The Salvation Army is a private organization,
and its staff members are not 'state actors.' Even if Plaintiff intends to assert that the [Salvation
Army] shelter and the alleged perpetrators of the assault were 'under contract' with the City of
New York, he cannot show that the shelter or the organization [is] performing a public function
sufficient to turn the shelter or its employees into state actors for purposes of § 1983 liability.
Access to food and shelter is not a constitutional right, nor is there any government obligation to
provide adequate housing.").

Plaintiff sues Defendants Cubesmart (a private storage company); Daniels Norelli Cecere
& Tavel PC (a private law firm that represented Plaintiff's landlord, Urban, in state-court
litigation brought by Urban against Plaintiff); Heilbraun and Tavel (private attorneys that
represented Plaintiff's landlord, Urban, in state-court litigation brought by Urban against
Plaintiff); Urban (Plaintiff's landlord, which is a private organization that provides housing to the
homeless); Abad, Andzeski, Coates, Lombardi, Paulemont, Shack, Southwell (employees of
Urban); and McCracken (an employee of SUS, another homeless services organization). Those
defendants are all private entities or individuals. And Plaintiff does not allege any facts that show
that any of those defendants were acting under color of state law when they allegedly injured
him. The Court therefore dismisses Plaintiff's claims under § 1983 against those private
defendants for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

E.    **Anti-Injunction Act**

Plaintiff asks this Court to intervene and stay his litigation that is pending in the state trial
and appellate courts. But this relief is prohibited by the Anti-Injunction Act, 28 U.S.C. § 2283.
This Act provides that "[a] court of the United States may not grant an injunction to stay
proceedings in a State court except as expressly authorized by Act of Congress, or where

necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. 2283.

Thus, "any injunction against state court proceedings otherwise proper . . . must be based on one

of the specific statutory exceptions [in the Act] if it is to be upheld." *Atl. Coast Line R.R. Co. v.*

*Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970). State-court proceedings "should normally

be allowed to continue unimpaired by intervention of the lower federal courts, with relief from

error, if any, through the state appellate courts and ultimately" the Supreme Court of the United

States. *Id.* The Act "is an absolute prohibition against any injunction of any state-court

proceedings, unless the injunction falls within one of the three specifically defined exceptions in

the Act." *Vendo Co. v. Lektro-Vend. Corp.*, 433 U.S. 623, 630 (1977).

Plaintiff asks this Court to order the defendants to provide discovery and explanations in

his pending state-court litigation; he also asks the Court to stay his pending state-court litigation.

(*See* ECF 8, at 77.) But he has alleged nothing to suggest that one of the exceptions to the Act's

prohibition against federal-court intervention into state-court proceedings apply or allows that

relief. The Court therefore dismisses such claims for injunctive relief as prohibited by the Anti-

Injunction Act.

### F.     Claims of conspiracy

Plaintiff's asserts claims of conspiracy under 42 U.S.C. §§ 1983 and 1985, and associated

claims under 42 U.S.C. § 1986. To state a claim of conspiracy under § 1983, a plaintiff must

show "(1) an agreement between two or more state actors or between a state actor and a private

entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in

furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.

1999). To state a claim of conspiracy under § 1985(3), a plaintiff must show that there exists:

(1) a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws,

or the equal privileges or immunities under the laws; (3) an overt act in furtherance of the

conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of his right or privilege as a citizen of the United States. *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). "[T]he [§ 1985(3)] conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (internal quotation marks and citation omitted). Vague and unsupported assertions of a claim of conspiracy, either under § 1983 or § 1985(3), will not suffice. *See, e.g., Wang v. Miller*, 356 F. App'x 516, 517 (2d Cir. 2009) (summary order); *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990).

Section 1986 provides a remedy against individuals who "kn[ew] of and ha[d] the ability to aid in preventing a § 1985 conspiracy . . . [and] decline[d] to take steps preventing that conspiracy. . . ." *Wahad v. FBI*, 813 F. Supp. 224, 232 (S.D.N.Y. 1993); *see* § 1986. Claims under this section are only valid "if there is a viable conspiracy claim under § 1985." *Gagliardi*, 18 F.3d at 194.

Plaintiff's allegations about a conspiracy between the defendants are vague and without detail; Plaintiff is merely expressing his dissatisfaction with his landlord (Urban), as well as with HRA's decision to either not pay, or stop paying, his storage fees to Cubesmart. The Court therefore dismisses Plaintiff's claims of conspiracy under § 1983 and § 1985(3) for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). And because of that, the Court also dismisses Plaintiff's claims under § 1986. *See id.*

## G.    Claims under civil RICO

Plaintiff asserts claims under civil RICO, which "creates a private right of action for individuals to enforce the RICO statute." *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 322 (E.D.N.Y. 2004). The civil RICO enforcement provision states that "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] . . . may sue . . . in any

appropriate United States district court and shall recover threefold the damages . . . ." 18 U.S.C.

§ 1964(c). In order to state a violation of § 1962, and thus, a claim under the civil RICO

enforcement provision, a plaintiff must allege facts showing: "(1) that the defendant (2) through

the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity'

(5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an

'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan*

*Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (quoting § 1962(a)-(c)). He must also "allege that he

was 'injured in his business or property *by reason of* a violation of section 1962.'" *Id.* (quoting

§ 1964(c)) (italics in original).

To state a claim of a civil RICO conspiracy under § 1962(d), a plaintiff must allege facts

showing that the defendants "agreed to form and associate themselves with a RICO enterprise

and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering

activity in connection with the enterprise." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187

F.3d 229, 244 (2d Cir. 1999). A plaintiff must also show that "if the agreed upon predicate acts

had been carried out, they would have constituted a pattern of racketeering activity." *Id.* at 244-

45.

Plaintiff fails to provide any facts that would support any claim under civil RICO – either

a claim of civil enforcement or one of conspiracy. The Court therefore dismisses Plaintiff's

claims under civil RICO for failure to state a claim on which relief may be granted. *See*

§ 1915(e)(2)(B)(ii).

**H.    Claims under state law**

A district court may decline to exercise supplemental jurisdiction over claims under state

law when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C.

§ 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its

early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction . . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed the claims under federal law over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any claims under state law that Plaintiff is asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## LEAVE TO AMEND IS DENIED

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's amended complaint cannot be cured with another amendment, the Court declines to grant Plaintiff leave to file a second amended complaint.

## CONCLUSION

The Court directs the Clerk of Court to mail a copy of this order to Plaintiff and note service on the docket.

The Court dismisses this action.

The Court dismisses Plaintiff's claims under federal law as frivolous, for failure to state a claim on which relief may be granted, for seeking monetary relief from defendants that are immune from such relief, *see* 28 U.S.C. § 1915(e)(B)(i), (ii), (iii), and under the Anti-Injunction Act, *see* 28 U.S.C. § 2283.

The Court declines to consider, under its supplemental jurisdiction, Plaintiff's claims

under state law. 28 U.S.C. § 1367(c)(3).

SO ORDERED.

Dated:   October 21, 2020
         New York, New York

                                        _____
                                        Louis L. Stanton
                                        U.S.D.J.